UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSE MUNDY,

    Plaintiff,

v.                                           Case No. 2:07-cv-72

                                                  HON. ROBERT HOLMES BELL

PATRICIA CARUSO, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jesse Mundy filed this prisoner 42 U.S.C. § 1983 action against defendants Michigan Department of Corrections Director Patricia L. Caruso and Special Activities Coordinator Dave Burnett. Plaintiff asserts that defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 and the First Amendment. Plaintiff was denied a Kosher diet. Plaintiff asserts that the act of determining a prisoner's sincerity of belief is unconstitutional. Plaintiff requests a declaratory judgment, an injunction ordering a Kosher diet, compensatory damages of $25,000 from each defendant, punitive damages of $50,000 from each defendant, and costs.

Defendants have filed a motion for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by

affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff has sued MDOC Director Patricia Caruso. Liability under § 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under § 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert.*

*denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendant Caruso is clearly entitled to dismissal based upon lack of personal involvement. Defendant Caruso had no involvement in the decision to deny plaintiff Kosher meals. Accordingly, in the opinion of the undersigned, defendant Caruso is entitled to dismissal.

Plaintiff claims that defendants' conduct violated his constitutional right to freedom of religion and his rights under the RLUIPA, 42 U.S.C. § 2000cc-1.[1]

Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.

---

[1]The RLUIPA explains:
    (a)    General Rule
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
    (1)    is in furtherance of a compelling governmental interest; and
    (2)    is the least restrictive means of furthering that compelling governmental interest.
This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). If plaintiff has a sincere religious belief, then failing to provide him a religious based diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added). A claimant need not be a member of a particular organized religious denomination to show

>sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test – whether the plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a Kosher diet. *Id.* at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id.* at 1523.[2] As noted by the Tenth Circuit in *Mosier*[3], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

In support of their motion for summary judgment, defendants assert that because Kosher food preparation requires special equipment and training, not every MDOC facility offers a Kosher diet. As a result, many prisoners use a religious diet request as a means of transferring to

---

[2] The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[3] *See Mosier*, 937 F.2d at 1523.

a facility of their choice. In order to avoid manipulation of this sort, the MDOC limits a Kosher diet to those prisoners whose sincere religious belief requires them to eat only Kosher foods. Defendants assert that this protects the MDOC's interest in maintaining security and order in the operation of MDOC facilities.

Defendants have the right to ensure that each prisoner is sincere in his belief before allowing him access to the Kosher Meal Program. The use of MDOC Operating Procedure 05.03.150 was a legitimate means of determining whether a prisoner is entitled to the Kosher menu. The MDOC Operating Procedure 05.03.150-A provides:

> K. A prisoner who wants to participate in the Kosher Meal Program must submit a written request to the Warden or designee for approval. The request shall include a statement as to his/her religious beliefs which necessitate a Kosher diet.
>
> L. Upon receipt of such a request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner and obtain a response to the following questions:
>
>> 1. Briefly explain the major teachings of your designated religion.
>>
>> 2. Why is a kosher diet required by this religion.
>>
>> 3. What is a kosher diet? In other words, how does it differ from food otherwise prepared by the institution? What types of food are not allowed?

Defendant Burnett explained the reason that plaintiff's request for a Kosher diet was denied:

> Mundy #350690 requested accommodation with the Kosher menu. It is noted that Mundy has been self-identified as Jewish for about one year. He was last denied accommodation with the Kosher menu on 4/22/05. It is also noted that Mundy has changed his religious preference four times in the past three years. This suggests the may not be sincere about pursuing the practice of Judaism. Mundy was interviewed by Chaplain Keith Snyder. Snyder reports Mundy's

>responses to interview questions were brief and perfunctory. He seemed able to provide only very limited information about the major beliefs of his faith. He couched his responses in Christian language rather than using Jewish terms. He was similarly brief in talking about his dietary requirements. Snyder reported that Mundy seemed to want to provide the minimum amount of information possible. While sincerity is based on extrinsic data that is often difficult to ascertain, it appears that Mundy's decision to not take time to learn about his faith and its requirements suggest he has not been sincere in the pursuit of the practice of any faith. Given the fact he has been self-identified as Jewish for more than one year, he should have been able to be knowledgeable about his faith. Consequently, based on the information available to me, and based on the appearance that he is not sincere regarding the practice of his faith, Mundy's request for Kosher accommodation is denied at this time. He should not be transferred for the purpose of Kosher accommodations.
>
>It is understood that denial of admission to a special religious menu is not a failure to recognize faith preference. Requests to declare faith preference, to attend religious services, and/or to purchase and possess religious property must be processed according to Department policy.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which justify the refusal to provide plaintiff a Kosher diet. Based upon plaintiff's interview and the information gathered by defendants, it was not unreasonable to deny plaintiff's request. Plaintiff exhibited a lack of knowledge of the requirements of Judaism. The policy used by the prison and the interview process, contrary to plaintiff's characterization, is not a pass or fail test. The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs.

Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. However, a lack of the basic knowledge regarding why specific food must be consumed for a religion is a strong indication of a lack of sincerity. Under the circumstances of this case, it is the opinion of the undersigned that defendants correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available. In the opinion of the undersigned, defendants are entitled to summary judgment on plaintiff's RLUIPA and freedom of religion claims.

Defendants have also moved for dismissal based upon the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

- 10 -

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Defendants have established that they did not violate plaintiff's constitutional rights. Accordingly, in the opinion of the undersigned, defendants are entitled to the qualified immunity defense.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #12) be granted and this case be dismissed.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 12, 2008